MISWALD, Plaintiff in error, vs. THE STATE, Defendant in error.

*November 14—December 8, 1931.*

For the plaintiff in error there was a brief by *Nohl, Nohl, Petrie & Blume* of Milwaukee, and oral argument by *Henry M. Blume.*

For the defendant in error there was a brief by the *Attorney General, George A. Bowman,* district attorney of Milwaukee county, and *John P. Donnelly,* assistant district attorney, and oral argument by *A. J. Beyer,* deputy district attorney.

WICKHEM, J. The information charges that the defendants, Norman Miswald, George M. Braun, and Lester P. Kanitz, by virtue of their employment, had the care of $953.14 of the moneys of one Marie Strohm, and that the defendants feloniously embezzled and converted this sum to their own use, without the consent of their employer, Marie Strohm. The information is based on sec. 343.20 of the Statutes, which provides:

". . . Any bailee, . . . trustee, agent, . . . who, by virtue of his business or employment, shall have the care, custody, or possession of or shall be intrusted with the safe-keeping, disbursement, investment or payment of any money, or shall have the care, custody or possession of or shall be intrusted with the safe-keeping, carrying, . . . or any other property or thing which is the subject of larceny, belonging to such other person, . . . shall embezzle or fraudulently convert to his own use or to the use of any other person except the owner thereof, or shall take, carry away or secrete, with intent to convert to his own use or to the use of any other person except the owner thereof any such money, fund," etc., shall be guilty of embezzlement.

The facts in the case are not seriously in dispute. Mrs. Strohm was the owner of two lots located in Wauwatosa. On the 10th of October, 1928, she entered into a contract with the firm of Braun, Kanitz & Miswald, Inc. (of which defendants were the sole or principal stockholders), whereby the corporation agreed to build two duplexes for the com-

plaining witness. The complaining witness agreed to pay the corporation for the performance of this contract the sum of $19,800. It was provided that the purchase price should be paid as follows: "No dollars at the date of the ensealing of this instrument, balance as follows: balance to be building and loan mortgage." The contract contained the further provision: "Owner of the lots is to deed the two lots over to the builders, Braun, Kanitz & Miswald, until the buildings are completed, after which the lots will be deeded back to the owner." In accordance with this agreement Mrs. Strohm executed deeds to the two lots to Braun, Kanitz & Miswald, Inc.

Some two or three days after receiving the deeds the defendants went to the Badger State Bank and, without any knowledge on the part of the complainant, arranged, on behalf of the corporation, for a loan of $2,500 on each lot. On the 23d of October the bank credited the account of the corporation with the sum of $3,000, later advancing an additional $2,000. At the time of the loan of $3,000 the corporation's balance with the bank was $148.86. On October 22d, in anticipation of this loan being granted by the bank and credited to their account, the corporation caused to be issued seven separate checks, three of which were payable to the defendant Miswald in the sums of $200, $200, and $100; three to the defendant Kanitz in the sum of $200, $200, and $100, and one to the defendant Braun in the sum of $100, making a total of $1,100. The testimony shows that these checks were paid to the defendants for salaries which they had theretofore earned as officers of their own corporation.

On December 12, 1928, the defendants arranged for a mortgage of $18,000 to the Wauwatosa Building & Loan Association, and part of the proceeds of this loan were used to repay the obligation to the Badger State Bank. Work on

the buildings was started in the early part of November, 1928. Liens amounting to $8,886.26 were filed against the property, and later reduced to judgment, which defendants have never satisfied, and the property has never been reconveyed to the complainant in accordance with the contract.

The embezzlement charged in this matter relates to the checks totaling $1,100, heretofore mentioned, and the sum of $953.14 is arrived at by deducting from the sum of $1,100 the sum of $148.86, which was on deposit to the credit of the corporation at the time the checks were issued.

The first contention of the defendants is that the crime of embezzlement, as defined in sec. 343.20, Stats., limits the crime to the fraudulent conversion of property or things which are the subject of larceny. From this it is argued that since the only thing intrusted to the defendants was real estate, and since concededly real estate may not be the subject of larceny, there was no embezzlement. Involved in this contention is the further contention that the defendants, by virtue of the deeds to the property, were the complete and unconditional owners of the lots, subject merely to a contract obligation to reconvey the lots with the buildings upon them upon satisfaction by the complainant of the terms of the contract, and that there was no fiduciary relationship between the complainant and these defendants out of which a breach of trust may be constructed. The final contention is that there was no showing of a felonious intent, as indicated by the fact that the loan was completely repaid.

It is not claimed that the complaining witness, at the time of the contract, parted with anything but her lots, and it is conceded that real property cannot be the subject of embezzlement; hence, in order to bring defendants' acts within the condemnation of the statute under which they have been prosecuted, it is necessary to hold that complainant retained the equitable ownership of the lots; that defendants became vested with the legal title as trustees to carry out the terms

of the contract; that the loan represented proceeds of the lots, and that the conversion of a portion of the amount loaned constituted embezzlement.

It is unnecessary to decide, and we do not decide, that complainant did retain the equitable ownership or that defendants did become trustees. Assuming these to have been the legal consequences, we find it impossible to conclude that there has been an embezzlement of the proceeds of these lots. The highest value that any witness put upon the two lots was $3,600. The amount of the loan by the bank was $5,000. While it is true that the cashier of the Badger State Bank testified that the bank relied primarily and almost wholly upon the security of the lots in making this loan, we think it is evident that a loan of $5,000 upon lots worth not more than $3,600 could not result in making the entire $5,000 the proceeds of the lots, even assuming that the legal theory most favorable to the prosecution is adopted in this case. This being true, it is evident that there was a balance of upwards of $1,400 which cannot be attributed to the lots, at least in the sense of being treated as proceeds of the lots. The amount alleged to have been embezzled is considerably less than $1,400, and consequently we find ourselves unable to come to the conclusion that the $900 was property belonging either in law or in equity to the complaining witness. So long as there remained in the bank, undisposed of, a sum of money equal to the value of the lots, we cannot indulge in the presumption that the money paid out was the portion of the loan which was secured by the mortgage upon the lots. Under these conditions it is impossible to sustain the conviction, and unnecessary to consider the further matters raised by the plaintiff in error.

*By the Court.*—Judgment reversed, and cause remanded with directions to discharge the plaintiff in error.

FAIRCHILD, J., took no part.